IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSEPH ANTWAN BONNER,          §
TDCJ-CID No. 1258181,          §
                               §
          Petitioner,          §
                               §
v.                             §          CIVIL ACTION NO. H-07-1230
                               §
NATHANIEL QUARTERMAN,          §
                               §
          Respondent.          §

## MEMORANDUM OPINION AND ORDER

Joseph Antwan Bonner, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a federal Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a state court conviction.  Respondent Nathaniel Quarterman has filed a Motion for Summary Judgment (Docket Entry No. 12) supported by State Appeal and Habeas Records.  After reviewing the records, the pleadings, and the applicable law, including the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the court will grant the respondent's Motion for Summary Judgment, deny the petition, and deny a Certificate of Appealability.

## I. Procedural History

A jury convicted Bonner of aggravated robbery and sentenced him to thirty years imprisonment.  State v. Bonner, No. 968543 (337th Dist. Ct., Harris County, Tex., Aug. 5, 2004).  Bonner appealed the judgment, which was affirmed by the Court of Appeals for the Fourteenth District of Texas.  Bonner v. State, No. 14-04-

00797-CR, 2005 WL 3435417 (Tex. App. – Houston [14th Dist.] Dec. 15, 2005).  The Texas Court of Criminal Appeals refused Bonner's petition for discretionary review (PDR) on March 29, 2006.  <u>Bonner v. State</u>, No. 0196-06.

On December 21, 2006, Bonner filed a state application for writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure.  The Court of Criminal Appeals denied the application without written order on findings of the trial court without a hearing.  <u>Ex parte Bonner</u>, No. 66,726-01 (Tex. Crim. App. Feb. 21, 2007).  Bonner filed the instant habeas petition with this court on March 22, 2007.

## II. <u>Facts Established at Trial</u>

Among Bonner's grounds for relief is a challenge to the sufficiency of the evidence to support his conviction.  Therefore, it is necessary to review the facts established at the trial:

> Shortly after midnight on November 17, 2003, Dierdre Williams drove into her apartment complex. Williams noticed that a white Mazda Protégé had followed her through the open gate and around to the back of the complex where her apartment was located. The white Protégé pulled into a parking space near where she parked. Williams exited her vehicle and opened the back door to retrieve some items. At this time, a light-skinned tall black male, later identified as appellant, approached her from the side, pointed a gun at her neck, and said, "B----, give me the keys or you're going to die." The man had his face covered. Another man grabbed the keys from Williams, and she ran to her apartment.
>
> Williams heard the men trying to operate her vehicle, and then ultimately abandon the pursuit because they could not work its standard transmission. Williams went back to the parking lot, and watched while the two men who had

-2-

approached her drove away with two other men in the white
Protégé. She made eye contact with one of the men, wrote
down the vehicle's license plate number, and called the
police.

Houston police officer, Guy Majors, arrived on the scene
approximately twenty minutes later, talked to Williams,
and issued a general radio broadcast with the car's
description. Officer Peter Comer received the broadcast
and spotted the white Protégé, matched the license
number, and saw that four black men were inside the
vehicle. Officer Comer ran the license plate in his
computer and learned the Protégé had been stolen the day
before. The occupants of the car drove away at a high
rate speed and crashed into a parked vehicle. All four
occupants abandoned the Protégé and fled on foot.

Officer Greg Jelin helped establish a perimeter around
the area and joined in a search for the suspects. Officer
Jelin found appellant, who was holding a sawed-off pump-
action shotgun wrapped in some sort of material. Officer
Jelin ordered appellant to "stop and get down." Appellant
attempted to escape and went underneath a fence. Officer
Jelin could not fit under the fence because of the
bulkiness of his on-duty gear. Shortly thereafter, a
private citizen found appellant hiding behind some
bushes. Appellant apparently had discarded the shotgun.
Police officers and dogs conducted a search but were
unable to retrieve it.

Williams was presented with a videotaped line-up from
which she positively identified one of the line-up
participants as the lighter-skinned black male who was
sitting in the Protege's back seat and with whom she had
made eye contact. She could not identify the other
lighter-skinned black male that held the shotgun on her
because she never saw his face. Williams testified that,
although she could not be completely positive, she was
fairly confident that appellant was the one who had held
the gun. She based this identification on his height,
complexion, and hair.

*2 Two of appellant's accomplices, Floyd Stevenson and
Tommy Allison, also testified. Stevenson stated that he
and appellant had stolen the white Protégé from Michelle
Ranum the night before they robbed Williams. Neither
individual had worn masks or gloves while stealing
Ranum's vehicle. They targeted Ranum when she drove her

-3-

car into her apartment complex. They approached Ranum when she exited her car. Appellant took the keys from Ranum, and appellant and Stevenson got into the car and drove away.

Stevenson further testified that the following evening Allison and another man (Derrick Dancer) joined appellant and him at Stevenson's house. The four of them conspired to commit another robbery, got into the stolen Protégé, and went to Allison's house to retrieve a gun. Appellant then drove them to the area of Williams's apartment complex where he told them that they were going to rob some drug dealers. They decided that they should steal another car and abandon the stolen Protégé. Stevenson testified that they followed Williams into her apartment complex. Appellant and Allison got out of the car and approached Williams with a gun in an attempt to steal her car. Stevenson testified that they were unable to steal the car because none of them could operate a standard transmission. After being followed by a police officer, and hitting a parked vehicle, they all abandoned the Protégé and fled on foot. Stevenson testified that he believed appellant carried the shotgun with him as he ran away.

Next, Allison testified that he met appellant, Stevenson, and Dancer on November 17, 2003, and had a discussion about robbing someone. Allison further testified that they all got into the white car, retrieved a shotgun from his house, and appellant drove them to an area of town to rob "some drug dealers." Allison testified that they approached Williams and attempted to steal her car. He stated that appellant wore a mask, held a gun to Williams, and demanded the keys to her car. Allison testified that he took the keys from Williams but faced away as much as he could because his face was not covered. When they realized that they could not operate Williams's car, they returned to the white Protégé and left the complex.

Finally, Michelle Ranum (the owner of the white Protégé and victim of the first robbery) testified that shortly after midnight on November 16, 2003, appellant and Stevenson (their faces uncovered) approached her. She testified that they asked her for a cigarette and light. When she replied that she did not have any cigarettes, they walked away. Ranum got out of her car and walked to her apartment. Appellant approached her again and

-4-

demanded her keys. After a struggle, appellant took her
keys and purse. Ranum testified that appellant and
Stevenson drove away in her car and she called the
police. Ranum viewed a line-up in which she immediately
identified Stevenson and appellant as her assailants.

<u>Bonner</u>, 2005 WL 3435417, at * 1-2.

### III. <u>Bonner's Grounds for Relief</u>

Bonner alleges the following claims in his petition (Docket

Entry No. 1) and his supporting Memorandum (Docket Entry No. 2):

1. Denial of effective assistance at trial because his
   attorney failed to:

   a.   request a limiting instruction regarding extraneous
        offenses;

   b.   timely object to State's admission of extraneous
        aggravated robbery offense;

   c.   object to prior inconsistent statement made in
        arresting officer's report and trial testimony;

2. Unconstitutionally suggestive lineup and identification
   procedures;

3. Prior inconsistent statement by arresting officer; and

4. There was no evidence or insufficient evidence to support
   the conviction.

### IV. <u>Parties' Arguments and Evidence</u>

Respondent contends in his Motion for Summary Judgment that

Bonner failed to exhaust available state court remedies with regard

to Claims 1(b) and 2 and that these claims are procedurally barred

from consideration by the federal courts because they were not

properly submitted for review on appeal or in the post conviction

proceedings.   The respondent further points out that the state

-5-

courts have explicitly relied on procedural bar to dismiss Bonner's prior inconsistent statement claim and contends that the claim is procedurally barred from federal review.   The respondent also argues that Bonner's ineffective assistance of counsel claims have no merit because he failed to show that his attorney's performance was deficient or that he was prejudiced by his counsel's performance.  With regard to Bonner's insufficiency of the evidence claim, the respondent contends that Bonner's argument that the evidence is factually insufficient is not actionable in a federal habeas proceeding.   The respondent further contends that the evidence against Bonner was legally sufficient to support the conviction under federal law.

In his Objection (Docket Entry No. 16), Bonner contends that he attempted to file a brief on direct appeal that raised some of the issues in this proceeding.  He specifically alleges that his pro se brief included arguments that the evidence was insufficient and that he had been subjected to an unconstitutional line-up and identification procedure.   Bonner further complains that he was not allowed to present his arguments concerning the alleged unconstitutional line-up procedure and insufficient evidence.  He also contends that he fully exhausted all claims concerning ineffective assistance of counsel in his Article 11.07 state habeas action.

Bonner disputes the respondent's argument concerning his

insufficient evidence claim.   He contends that there was no evidence to support his conviction because Diedre Williams's trial testimony "was not 100% positive" regarding his identification and was based on a "'gut feeling.'"   Docket Entry No. 16, at 3.   Bonner argues that the State failed to meet their burden proof and that no reasonable jurist could have found him guilty based on Williams's testimony.

### V. <u>Standard of Review and Applicable Laws</u>

Bonner's petition for writ of habeas corpus is subject to review under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996.   28 U.S.C. § 2254; <u>Woods v. Cockrell</u>, 307 F.3d 353, 356 (5th Cir. 2002); <u>Nobles v. Johnson</u>, 127 F.3d 409, 413 (5th Cir. 1997), <u>citing</u> <u>Lindh v. Murphy</u>, 117 S.Ct. 2059, 2068 (1997).   A federal habeas petitioner challenging a state court decision is not entitled to relief unless the state court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1); or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The new AEDPA provisions have "modified a federal habeas court's role in reviewing state prisoner applications in order to

-7-

prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 122 S.Ct. 1843, 1849 (2002), citing Williams v. Taylor, 120 S.Ct. 1495, 1518 (2000).  Habeas relief should only be granted where the state court decision is both incorrect and objectively unreasonable.  Martin v. Cain, 246 F.3d 471, 476 (5th Cir. 2001), citing Williams, at 1521.

The section 2254(d) test is applied only to claims that have been "adjudicated on the merits in state court."  Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000).  "The term 'adjudication on the merits,' like its predecessor 'resolution on the merits,' refers solely to whether the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing of the matter for procedural reasons.  Valdez v. Cockrell, 274 F.3d 941, 950 (5th Cir. 2001), citing Neal v. Puckett, 239 F.3d 683, 686-87 (5th Cir. 2001).  A "denial" of a state habeas application signifies that the Texas Court of Criminal Appeals addressed and rejected the merits of a particular claim. Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  In contrast, a "dismissal" conveys that the Court of Criminal Appeals refused to consider the claim without reaching the claim's merits. Id.  When the state court dismisses a claim on procedural grounds, the claim is procedurally barred from review by the federal courts. Ylst v. Nunnemaker, 111 S.Ct. 2590, 2593 (1991).  Texas's abuse of

-8-

the writ doctrine qualifies as a procedural bar.   Barrientes v. Johnson, 221 F.3d 741, 759 (5th Cir. 2000).   Even if a federal court were to find that the claim was unexhausted rather than procedurally barred, the claim may still be subject to dismissal as barred if the petitioner had previously filed a state habeas application and any further applications would be considered to be as successive under section 4 of Article 11.07 of the Texas Code of Criminal Procedure.   See Horsley v. Johnson, 197 F.3d 134, 136 (5th Cir. 1999); see also Busby v. Dretke, 359 F.3d 708, 724 (5th Cir. 2005) ("When the result of filing a second habeas application in the state courts is so clear, it is appropriate to consider the petitioner's claim barred rather than first requiring the state court to deny a successive writ.").   Texas's abuse-of-writ rule is ordinarily an "adequate and independent" procedural ground on which to base a procedural default ruling.   Matchett v. Dretke, 380 F.3d 844, 848 (5th Cir. 2004); Henderson v. Crockwell, 333 F.3d 592, 605 (5th Cir. 2003).

## VI. Analysis

### A.   Procedurally Barred Claims

Under 28 U.S.C. § 2254, a habeas petitioner must exhaust available state remedies before seeking relief in the federal courts.   See Nobles v. Johnson, 127 F.3d 409, 419-420 (5th Cir. 1997).   To exhaust his state remedies, the petitioner must fairly present the substance of his claims to the state courts, and the

state's highest criminal court must have an opportunity to review
the merits of the claims.   Id. citing Picard v. Connor, 92 S.Ct.
509, 512-13 (1971); Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir.
1990).   In Texas, a petitioner satisfies this requirement by
properly filing a PDR with the Texas Court of Criminal Appeals or,
in a post-conviction matter, by filing a state application for a
writ of habeas corpus in state district court, under Tex. Code Crim.
Pro. art. 11.07, which forwards the application to the Court of
Criminal Appeals.   See Richardson v. Procunier, 762 F.2d 429, 431-
32 (5th Cir. 1985).   The fact that an appeal has "been through" the
state court system is not enough to satisfy the exhaustion
requirement; the highest court must have a reasonable opportunity
to consider the merits of each of the claims presented in a federal
habeas petition.   Picard, 92 S.Ct. at 512.

The following claims were presented in Bonner's PDR:

1.   The Court of Appeals erred in ruling admissible testimony
that the appellant had obtained the white Mazda used in the
alleged offense during an unrelated auto theft and robbery
offense, where this extraneous offense was not relevant to any
issue in the case.

2.   The Court of Appeals erred in ruling admissible testimony
that the appellant had obtained the white Mazda used in the
alleged offense during an unrelated auto theft and robbery
offense, where the probative value of the extraneous offense
was substantially outweighed by the unfair prejudice, undue
delay, and confusion of the issues relevant to the case.

3.   The Court of Appeals erred in ruling the evidence
sufficient to support the appellant's conviction for
aggravated robbery, as matter of law, where the State failed

-10-

to corroborate the testimony of Floyd Stevenson and Tommy Allison.

4.   The Court of Appeals erred in ruling the evidence sufficient to support the appellant's conviction for aggravated robbery, as a matter of fact, where the State failed to corroborate the testimony of Floyd Stevenson and Tommy Allison.

Bonner v. State, No. 0196-06, PDR, at 1-2.

The subsequent state application for a writ of habeas corpus contained the following claims:

1.   "No/insufficient evidence" - The victim could not identify the defendant as having committed the aggravated robbery as alleged in the indictment.

2.   Ineffective assistance of counsel at trial and on appeal because:

a.   The trial attorney failed to request a limiting instruction concerning extraneous offenses.

b.   The appellate attorney failed to raise ineffectiveness of counsel regarding the omission of the limiting instruction on the extraneous offenses.

c.   The trial attorney failed to object to prior inconsistent statement made by arresting officer.

d.   The appellate attorney failed to raise ineffectiveness of counsel regarding the prior inconsistent statement made by arresting officer.

3.   The arresting officer gave testimony at trial which was inconsistent with his offense report.

Ex parte Bonner, No. 66,726-01, Writ Application, at 7-8.

-11-

Missing from both Bonner's PDR and his state habeas application are Bonner's federal habeas claims regarding the alleged unconstitutional line-up and his attorneys' alleged failure to timely object to State's admission of extraneous aggravated robbery offense, Claims 1(b) and 2. Further, Bonner's state habeas application includes statements that his defense attorney had properly objected to the extraneous offenses. Ex parte Bonner, at 7 and 12.

In most cases, this action would be subject to dismissal without prejudice in order to allow Bonner the opportunity to exhaust all of his claims through the state habeas process. Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998), citing Rose v. Lundy, 102 S.Ct. 1198 (1982). However, Bonner has filed a state habeas application and may not file another one challenging the same conviction regarding claims that could have been previously raised. TEX. CODE CRIM. P. art. 11.07 § 4. The federal courts have consistently held that Texas's abuse-of-writ rule is ordinarily an "adequate and independent" procedural ground on which to base a procedural default ruling. Matchett v. Dretke, 380 F.3d 844, 848 (5th Cir. 2004); Henderson v. Crockwell, 333 F.3d 592, 605 (5th Cir. 2003); Horsley v. Johnson, 197 F.3d 134, 137 (5th Cir. 1999). Therefore, the claims are subject to dismissal pursuant to a procedural bar where there are no remedies available in the state courts. Fuller v. Johnson, 158 F.3d 903, 906 (5th Cir. 1998).

Bonner may only overcome his procedural default by demonstrating cause and prejudice or that failure to consider the claim would result in a fundamental miscarriage of justice. <u>Morris v. Dretke</u>, 413 F.3d 484, 491-92 (5th Cir. 2005). Cause is demonstrated by establishing that some objective external factor impeded his efforts to present his claim to the state courts. <u>Meanes v. Johnson</u>, 138 F.3d 1007, 1011 (5th Cir.1999).

Liberally construed, Bonner's Objection (Docket Entry No. 16) includes an attempt to establish cause since he alleges that he raised the line-up and identification issue in his <u>pro se</u> brief that was rejected by the Court of Appeals. At that time an attorney represented Bonner on appeal and had filed a brief in his behalf. It is well established that a criminal defendant does not have the right to present a supplemental brief when he is already represented by an attorney on appeal. <u>Smith v. Collins</u>, 977 F.2d 951, 962 (5th Cir. 1992). Bonner has failed to show that his attorney erred in not including the claim in his brief, and he cannot overcome the procedural bar concerning the line-up and his identification. In addition, Bonner's allegation that his attorney was ineffective in failing to make a timely objection to the State's admission of the extraneous aggravated robbery offense is undermined by Bonner's state habeas application in which he states that his attorney did make such an objection. Moreover, the trial court's Statement of Facts (SOF) reflects that an objection was

-13-

made by Bonner's attorney and was overruled by the court.   Court
Reporter's Record Vol. 3 at 4-6.   Bonner has failed to show that
exclusion of the issues would result in a fundamental miscarriage
of justice because he has not shown that he was actually innocent
of the charge.  Fairman v. Anderson, 188 F.3d 635, 644 (5th Cir.
1999).    Therefore, the issues are procedurally barred.   Morris,
413 F.3d at 491-92.

B. Remaining Ineffective Assistance of Counsel Claims

The remaining claims regarding Bonner's contention that his
attorney was ineffective are based on an allegation that his trial
attorney failed to request a limiting instruction regarding
extraneous offenses and that he failed to object to a prior
inconsistent statement made in the arresting officer's report and
trial testimony.   A federal habeas corpus petitioner's claim that
he was denied effective assistance of counsel is measured by the
standards set out in Strickland v. Washington, 104 S.Ct. 2052
(1984). To assert a successful ineffectiveness claim, a petitioner
must establish both constitutionally deficient performance by
counsel and actual prejudice as a result of counsel's deficient
performance.   Id. at 2064.   It is the petitioner's burden to prove
both elements and his failure to demonstrate either deficient
performance or actual prejudice is fatal to an ineffective
assistance claim.  Green v. Johnson, 160 F.3d 1029, 1035 (5th Cir.
1998); Jernigan v. Collins, 980 F.2d 296 (5th Cir. 1992).

-14-

A counsel's performance is deficient if it falls below an objective standard of reasonableness. Strickland, 104 S.Ct. at 2064. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. West v. Johnson, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Strickland, 104 S.Ct. at 2066. Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 2068. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. Id.

-15-

Bonner presented his ineffective assistance of counsel claims in his state application for a writ of habeas corpus.   Before forwarding the records to the Texas Court of Criminal Appeals, the trial court entered the following relevant findings of facts and conclusions of law:

> 4. Applicant fails to allege sufficient facts, which if true, would entitle him to relief on his claims that both trial and appellate counsel were ineffective.   Ex parte Maldonado, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985);

> 5. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case;

> 6. Applicant fails to show, in all things, that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 686 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the Strickland standard in Texas); Narvaiz v. State, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part Strickland test).

Ex parte Bonner, at 24-25.   The Court of Criminal Appeals relied upon the above findings when it denied Bonner's habeas application. See id. at cover.   See also Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000), citing Ex parte Torres.   Bonner's conclusory allegations fail to rebut the state court findings and do not merit federal habeas relief.   See Blackledge v. Allison, 97 S.Ct. 1621, 1629 (1977); Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir.

-16-

1983).  Further, there is no support for Bonner's claims that his attorney was ineffective by failing to request a limiting instruction or failing to object to a prior inconsistent statement by the arresting officer.

Bonner's allegation that his attorney failed to request a limiting instruction is disproved by the trial court's jury charge, which includes the following language:

> You are further instructed that if there is any evidence in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

Bonner v. State, No. No. 14-04-00797-CR, Vol. 1 Transcript (TR) 69. The state court records thus refute Bonner's claim that his attorney was deficient in failing to request such an instruction and the claim shall be dismissed.  Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

Bonner's claim regarding the inconsistent statement is based on his allegation that the arresting officer testified that he saw Bonner with a shotgun but failed to include the observation in his report.  However, the report has not been provided and Bonner's bare assertions are insufficient to support such a claim.  See

-17-

<u>Miller</u>, 200 F.3d at 282.  In addition, the trial court made the following findings during the state habeas proceeding:

> 2.   Applicant fails to show any error on the part of trial counsel for not objecting to the evidence in question. <u>Cooper v. State</u>, 707 S.W.29 686, 589 (Tex. App.— Houston [1st Dist.] 1986, pet. ref'd); <u>Bonilla v. State</u>, 740 S.W.2d 583, 586–87 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd); <u>Ochoa v. State</u>, 717 S.W.2d 174, 175 (Tex. App.— Houston [1st Dist.] 1987, pet. ref'd);

> 3.   Applicant has failed to show how he was harmed by trial counsel's failure to object because Applicant fails to show that the trial judge would have committed error in overruling the objection if it were made. <u>Vaughn v. State</u>,931 S.W.2d 564 (Tex. Crim. App. 1996).

<u>Ex parte Bonner</u>, at 24.

The Court of Criminal Appeals adopted the trial court's findings and followed its recommendation when it determined that Bonner was not entitled to relief and denied his writ application. <u>See</u> <u>Jordan v. Dretke</u>, 416 F.3d 363 (5th Cir. 2005).  Such determinations are entitled to a presumption of correctness if they are "at least minimally consistent with the facts and circumstances of the case." <u>Hennon v. Cooper</u>, 109 F.3d 330, 335 (7th Cir. 1997); <u>see also</u> <u>Neal</u>, 239 F.3d at 696 ("[T]he 'unreasonable application' test under Section 2254(d) should [focus] on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence.").  Bonner has not shown that his attorney's failure to

-18-

object to an alleged inconsistent statement constituted ineffective assistance of counsel to the extent that he would be entitled to habeas relief.  See Harris v. Warden, Louisiana State Penitentiary, 152 F.3d 430, 440 (5th Cir. 1998).

C.  Inconsistent Statement

In his third claim, Bonner challenges the validity of the arresting officer's testimony by alleging a prior inconsistent statement.  This claim was rejected in the state habeas proceedings as procedurally barred.  Ex parte Bonner, at 25.  Under Texas law, matters that should have been raised on appeal cannot be challenged in a state writ of habeas corpus proceeding.  Id. citing Ex parte Townsend, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).  "The procedural-default doctrine precludes federal habeas review when the last reasoned state-court opinion addressing a claim explicitly rejects it on a state procedural ground."  Matchett v. Dretke, 380 F.3d 844, 848 (5th Cir.2004).  "Where, as here, a state court clearly and expressly states that its judgment rests on a state procedural bar, a presumption arises that the state court decision rests on independent and adequate state law grounds."  Pitts v. Anderson, 122 F.3d 275, 279 (5th Cir.1997).  Consequently, the claim is subject to dismissal as procedurally barred.

D.  Insufficiency of Evidence

In his fourth and final claim, Bonner asserts that "there was

no evidence or insufficient evidence to support the jury's finding that petitioner committed the alleged aggravated robbery." Docket Entry No. 1, at 8. Liberally interpreted, Bonner's contention is that the evidence is factually and legally insufficient to support the conviction.

Factual insufficiency is applied by the appellate state courts of Texas to determine whether a lower court's finding of guilt should be upheld. Clewis v. State, 922 S.W.2d 126, 133-34 (Tex. Crim. App. 1996). "'In conducting its factual sufficiency review, appellate court reviews the fact finders weighing of the evidence and is authorized to disagree with the fact finder's determination.'" Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000), quoting Clewis, 922 S.W.2d at 133. However, Texas's factual insufficiency standard does not apply in federal habeas proceedings because it is strictly a state law rule. See Brown v. Collins, 937 F.2d 175, 181 (5th Cir. 1991). Instead, the federal courts look only to whether the petitioner has been convicted in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. § 2254(a). Moreover, the federal courts are obliged to inquire whether the "violation infected the trial." Pemberton v.Collins, 991 F.2d 1218, 1223 (5th Cir. 1993). Therefore, this court will only consider whether the evidence is legally sufficient under federal law to support the conviction. Woods v. Cockrell, 307 F.3d 353, 358 (5th Cir. 2002), citing Clewis. See also Estelle

v. McGuire, 112 S.Ct. 475, 482 (1991); Weeks v. Scott, 55 F.3d 1059, 1062-62 (5th Cir. 1995) (it is not a federal habeas court's function to review a state's interpretation of its own law).

In habeas proceedings in the federal courts, the sole consideration regarding sufficiency of the evidence is set forth in Jackson v. Virginia, 99 S.Ct. 2789 (1979). "Our standard of review for an insufficient evidence claim in a federal habeas corpus proceeding is 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Hughes v. Johnson, 191 F.3d 607, 619 (5th Cir. 1999), quoting Jackson, at 2789. "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005), quoting United States v. Cyprian, 197 F.3d 736, 740 (5th Cir. 1999). Moreover, federal courts are obliged to pay great deference to the state appellate courts' analysis of the evidence and determination concerning the evidence  was sufficient to uphold the verdict. Callins v. Collins, 998 F.2d 269, 276 (5th Cir. 1993).

Bonner challenged the sufficiency of the evidence on direct appeal and in his post-conviction habeas application. In addition to the determinations cited in the second section of this Memorandum Opinion and Order, the Fourteenth Court of Appeals made the following findings with regard to the evidence:

In his third and fourth issues, appellant argues that the accomplice testimony of Stevenson and Allison was not sufficiently corroborated and therefore should have been excluded. Appellant further argues that without their testimony, the remaining evidence is not legally or factually sufficient to support his conviction. Appellant does not contest that the evidence is legally and factually sufficient with their testimony. We conclude that Stevenson's and Allison's testimony was sufficiently corroborated and that the evidence (with or without this testimony) is legally and factually sufficient to support his conviction.

In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellants' evidence outweighs the State's evidence. Wicker v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. Turro v. State, 867 S.W.2d 43, 47(Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

. . . .

As charged in this case, a person commits the offense of aggravated robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. See TEX. PEN. CODE ANN. §§ 29.02(a), 29.03(a) (Vernon 1994). A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or

assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 1994). Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement. Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986)(emphasis added). In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to commit the offense. Id. Further, circumstantial evidence may be used to prove party status. Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994).

Article 38.14 of the Code of Criminal Procedure provides that a conviction cannot stand on accomplice testimony unless it is corroborated by other evidence that tends to connect the accused with the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); Colella v. State, 915 S.W.2d 834, 838 (Tex. Crim. App. 1995); see also St. Julian v. State, 132 S.W.3d 512, 516 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Corroborating evidence is insufficient if it merely shows the commission of an offense. Tex. Code Crim. Proc. Ann. art. 38.14; Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). In assessing the sufficiency of corroborative evidence, we eliminate the testimony of the accomplice witness from consideration and examine the testimony of the other witnesses to ascertain whether the non-accomplice evidence tends to connect the accused with the commission of the offense. St. Julian, 132 S.W.3d at 516. The non-accomplice evidence need not by itself establish the accused's guilt beyond a reasonable doubt. Id. Rather, some evidence must exist that tends to connect the accused to the commission of the offense. Id.

The trial testimony tends to connect appellant to the aggravated robbery of Williams, even without the testimony of Stevenson and Allison. Proof that a defendant was at or near the crime scene at or about the time the crime occurred, coupled with other suspicious circumstances, even seemingly insignificant ones, may well be enough to connect the defendant to the offense. Dowhitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App.

1996); <u>Cox v. State</u>, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992).

In this case, the police officers testified at trial that they spotted the white Protégé a short time after the description of the car was broadcasted. The occupants in the vehicle crashed into a parked vehicle, and the Protege's four occupants fled on foot. Officer Jelin found appellant holding a wrapped up sawed-off pump action shotgun. He ordered appellant to "stop and get down," but appellant escaped under a fence. Soon thereafter, a private citizen found appellant hiding behind some bushes in a nearby location.

Evidence of flight evinces a consciousness of guilt and therefore would tend to provide suspicious circumstances that is coupled with appellant's presence near the crime scene. <u>See</u> <u>Bigby v. State</u>, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994); <u>Logan v. State</u>, 510 S.W.2d 598, 600 (Tex. Crim. App. 1974) (holding that when unexplained, flight has long been deemed indicative of a "consciousness of guilt"); <u>Torres v. State</u>, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) (holding that a "consciousness of guilt" is perhaps one of the strongest kinds of evidence of guilt). We conclude that this evidence tends to connect appellant to the commission of the robbery of Williams. <u>See</u>, <u>e.g.</u>, <u>Herron v. State</u>, 86 S.W.3d 621, 633 (Tex. Crim. App. 2002) (stating that appellant's possession of stolen property is a factor that connects appellant to offense); <u>Hernandez v. State</u>, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (holding that the state connected the defendant to the offense by offering evidence that (1) a few months before the murder the defendant had been in possession of a gun similar to that used in the murder (a twelve gauge shotgun), and that (2) the defendant fled the area without explanation after the offense); <u>Jackson v. State</u>, 745 S.W.2d 4, 13 (Tex. Crim. App. 1988) (concluding that the State connected the defendant to the offense through the fact that the defendant was driving the deceased's car the day after the murder, and the defendant was found in possession of a watch similar to one owned by the victim). Article 38.14 requires only some non-accomplice evidence tending to connect the defendant with the crime, not non-accomplice evidence for every element of the crime. <u>Vasquez v. State</u>, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001). Therefore, we conclude that the non-accomplice evidence is sufficient to connect appellant to

-24-

the aggravated robbery. <u>See Hernandez</u>, 939 S.W.2d at 177-79.   The testimony presented by the State shows that appellant encouraged and aided in the commission of the aggravated robbery of Williams.

The evidence presented in this case is both legally and factually sufficient to support appellant's conviction of aggravated robbery.

<u>Bonner</u>, 2005 WL 3435417, at *5-7.

This analysis is presumed to be the state courts' determination of the issued because it is the last reasoned state court opinion concerning the sufficiency of the evidence.   <u>See Ylst</u>, 111 S.Ct. at 2594.   This court will assume that the Court of Criminal Appeals applied the 'proper clearly established Federal Law' in its subsequent denials of the evidentiary claims without a written opinion.   <u>Jordan v. Dretke</u>, 416 F.3d 363, 367-368 (5th Cir. 2005).   Consequently, this court must determine whether the state court decision was 'contrary to' or 'an objectively unreasonable application of' that law."   <u>Id</u>.   The appellate court's thorough review of the evidence is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); <u>Callins</u>, 998 F.2d at 276, <u>citing</u> <u>Parker v. Procunier</u>, 763 F.2d 665, 666 (5th Cir. 1985).   <u>See also</u> <u>Valdez v. Cockrell</u>, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").

The record demonstrates that Bonner was found near the scene of the crime and that he fled from police officers.   Such evidence

-25-

supports a finding of guilt.  United States v. Martinez, 190 F.2d 673, 678 (5th Cir. 1999); Whittington v. Estelle, 704 F.2d 1418, 1425 (5th Cir. 1983).  One of the officers observed Bonner holding a weapon, evidence which further implicated him as a party to the robbery.  See Madden v. Collins, 18 F.3d 304, 309 (5th Cir. 1994). Further, the accomplice testimony by Stevenson and Allison against Bonner was sufficient to  uphold the conviction and not violate the Constitution.  Brown v. Collins, 937 F.2d 175, 182 n.12 (5th Cir. 1991).  In light of the record, the state courts' rejection of Bonner's sufficiency of the evidence claim is not an unreasonable application of Jackson v. Virginia, and he is not entitled to relief under the AEDPA.  Ramirez v. Dretke, 398 F.3d 691, 693-95 (5th Cir. 2005); Hughes, 191 F.3d at 619.

Therefore, this action should be dismissed because Bonner has failed to demonstrate that he is entitled to habeas relief.

### VII.  Motions for Supplemental Writ and Appeal

Bonner filed two motions (Docket Entry Nos. 17 and 18), dated October 22, 2007, in which he attempts to amend his petition by adding claims that his trial attorney was ineffective in failing to object to accomplice testimony and that there was insufficient evidence to corroborate the accomplice testimony.  The motions were filed more than two months after the respondent had filed his Motion for Summary Judgment and will be denied because the proposed amendments could have been previously raised. See Briddle v. Scott,

-26-

63 F.3d 364, 379 (5th Cir. 1995); <u>United States v. Espinoza</u>, 82 F.3d 640, 642 (5th Cir. 1996).

On the same date Bonner filed his motions to amend his habeas petition, he filed a notice of appeal (Docket Entry No. 19) asserting that the court had denied him leave to amend his petition.  Bonner also filed a Application to Proceed In Forma Pauperis on Appeal.

Apparently, Bonner desired to prevent the court from dismissing his habeas petition.  However, a notice of appeal from a nonappealable order does not divest a district court of jurisdiction over a matter before it.  <u>United States v. Hitchmon</u>, 602 F.2d 689 (5th Cir. 1979).  The Application to Proceed In Forma Pauperis will be denied because it was not filed in good faith since Bonner did not even wait for the court to rule on his motion before filing his Notice of Appeal.

## VIII. <u>Certificate of Appealability</u>

Under 28 U.S.C. § 2253, Bonner needs to obtain a certificate of appealability before he can appeal this Memorandum and Order dismissing his petition.  To obtain a certificate of appealability, Bonner must make a substantial showing of the denial of a constitutional right.  <u>Williams v. Puckett</u>, 283 F.3d 272, 276 (5th Cir. 2002).  To make such a showing, Bonner must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the

questions are adequate to deserve encouragement to proceed further. Lucas v. Johnson, 132 F.3d 1069, 1073 (5th Cir. 1998). For the reasons stated in this Memorandum Opinion and Order, Bonner has not made a substantial showing of the denial of a constitutional right. Newby v. Johnson, 81 F.3d 567, 569 (5th Cir. 1996). The Court **DENIES** the issuance of a certificate of appealability in this action.

## IX. CONCLUSION AND ORDER

The Court **ORDERS** the following:

1.  Respondent's Motion for Summary Judgment (Docket Entry No. 12) is **GRANTED.**

2.  Bonner's motions (Docket Entry Nos. 17, 18, and 20) are **DENIED.**

3.  This action will be dismissed, with prejudice and a Certificate of Appealability will be denied.

**SIGNED** at Houston, Texas, on this 14th day of November, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE